May it please the Court, Eric Multop on behalf of Appellant Sen Duong. I'd like to reserve three minutes for rebuttal. I'm going to emphasize the Griffin issue here. It was 40 years ago that the United States Supreme Court clearly established that not only does the defendant in a criminal case have a right not to testify, to rely on his privilege against self-incrimination, but that the prosecutor can't argue that his exercise of that right is a violation of the law. That's the rule we're asking to be applied here. The first issue is whether the California Court of Appeal unreasonably applied that rule in its decision. I can demonstrate that to the Court with great simplicity and ease, referring the Court to the one sentence in the entire Court of Appeal opinion where they address this issue. The bottom of page 9 of the Court of Appeal opinion, the Court says, we conclude that the prosecutor's remarks calling the jury's attention to the fact that Duong had not given any explanation, quote, why those three murderers shot to death three innocent people, close quote, was fair comment on the evidence. That's it. That's all the analysis. That's all the application of Griffin to the facts of this case. The problem here is that the Court of Appeal focused only on the part of the prosecution's evidence that we have not argued constitutes the Griffin error and totally ignored the second two passages where the prosecutor really focused in on it, on Sen Duong and said nothing excuses, there's no evidence presenting nothing to excuse him, and when the prosecutor said there's no one, no excuse, there's no evidence. Those are the core passages that constitute the Griffin violation and the California Court of Appeal entirely ignored them in its analysis and application of the law to the facts of this case. Now, I've asked the Court to apply the approach of Lincoln v. Sun, this Court's precedent, to determine whether we have prejudicial error from this argument. And there are the three touchstones there. First, whether the prosecutor's comment was direct and extensive. Second, whether the prosecutor emphasized an inference of guilt from the defendant's silence. And third, whether there was evidence that would have supported an acquittal. And this is an unusual case where the prosecutor explicitly, expressly, and repeatedly argued that the failure of any alibi testimony supported an acquittal. Now, this context is when viewed in the dynamic of the argument, the prosecutor's initial argument focused on Sen Duong's character evidence, the character evidence that Sen Duong was a Chinese immigrant via Norway, a soccer player, a wholesome activity, a junior college student, another wholesome activity, and a person of peaceable character, unlikely to get mixed up in this Vietnamese gang exchange of bullets and death. That was the defense testimony presented. The prosecutor's response was to say it was very nice, the defense presented a very nice man, Mr. Colvin, to the opening argument and the closing argument. Where's the alibi evidence? Well, there is your Supreme Court case that says this was a constitutional error. I'm citing Griffin v. California, 1965. Yes, but that doesn't bear directly on this indirect kind of thing. You're making some enlargement of Griffin, aren't you? No, no, this is right within the heartland of Griffin, because when the prosecutor says no one can contradict that Sen Duong wasn't there, that necessarily includes the defendant who's sitting three feet away from him, who's been sitting in court during the entire course of the prosecution. That's about as direct as it can be. Otherwise, the prosecutor could say with impunity, no one, including but not limited to the defendant, has presented any alibi testimony. That's Griffin by any standard, Your Honor. Wow, you've added a few words there. Yes, but if Your Honor is alluding to the Teague Doctrine, the Teague Doctrine doesn't require an absolute verbatim recitation of a particular type of prosecutorial misconduct before it's cognizable in a subsequent case. Griffin established the principle. Lincoln v. Sun confirms it and applies it, which the Court can – the Court is always entitled to use circuit authority in interpreting how the rule applies. Well, it can under Teague, but AEDPA provides a restriction. That's right. So we have a direct precedent, and under AEDPA, the court of appeal cases can also be referred to. And Lincoln v. Sun states that comment is impermissible if it is manifestly intended to call attention to the defendant's failure to testify, or is of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify. There's no way the jury could have avoided taking it as a comment on the defendant's failure to testify in this case. And that's only half the problem here, because the prosecutor directly argued to the jury, the defense wants you to infer from his good character, from Duong's good character, that he's unlikely to be involved in a gang shooting. But I'll tell you what the right inference is here, because no one got up – no one can contradict that Sen Duong was not there and did not participate in the murder – in this murder. That shows he was there that night. Quote, that's the inference, close quote. That's RT-1448. And that's the – that's probably the strongest passage in any case that this Court – or I've reviewed that – by which the prosecutor argues an inference of guilt from the failure of the defendant or anybody else to present – to present alibi testimony. Let's assume for the moment there's Gryphon error. We're here on habeas review, so explain to me how you conclude – or how we can conclude that the Gryphon error had a substantial and injurious effect on the verdict. Your Honor, that brings us to the third prong of Lincoln v. Sun and the Brecht standard. The prosecution's evidence in this case was equivocal as to – as to Mr. Duong. In the aftermath of the shooting, the police rounded up a large group of primarily Vietnamese youth. There were interrogations. People made statements, recanted statements. People granted immunity. The witnesses who testified are – may, I think, be colloquially characterized as squirrelly from the point of view of credibility. And in any case, their credibility was suspect because of the – because of the nature of their involvement in unity. The other piece of evidence was the – was the videotape at the scene of the crime, which, as defense counsel argued to the jury, all the computer wizards of Silicon Valley could not enhance that enough to make an identification of anybody from the videotape. There's no – there's no – and that's at RT 1361. There's no direct, independent identification of defendant Duong at the scene of the crime. Well, you did – they did – some witnesses testified that he was there, true. Squirrelly or not, they testified, right? There's conflicting evidence. So there would be evidence on the other side then? Absolutely. We have – let me just cut to the chase. You have witnesses who say he was at the gathering prior to the shooting and witnesses that say he was at the shooting. And for recollection, sir, at least one witness said that's the defendant on the videotape. Now, I know you can test all those, but – Well, sir – Your Honor, exactly. So we're in the position of – what don't we have? You know, we don't have a confession. We don't have an independent eyewitness. We don't have any physical evidence tying them to the offense. We have evidence which is sufficient to get the prosecution past the judgment of acquittal perhaps, but that's not to test on a habeas case. The court has to weigh the evidence. And the prosecutor conceded that Duong was not a gang member, conceded that the identification could not be made from the videotape itself, but only could be credited if the jury believed that the Linh Nguyen, the girlfriend of somebody else, was accurate in her recanted statement that so-and-so was Sen Duong, which the defense attorney argued that was never recorded. Part of the interrogation where she purported to look in this grainy videotape and say, oh, I think that guy is Sen Duong, that was never recorded. So the actual reliability context of it was never presented to the jury. This is a weak case. And one witness saw him with a .22, is that right? Testified he had a gun? Okay. There's one witness who testified that he saw him – no, I think my recollection is that witness did not testify that he saw him with a gun. He was impeached by a prior statement to a police officer that he had previously said that Sen Duong left the residence of Koh Akon with a gun. With a gun. Right. Okay. It's fairly hard for us to weigh the credibility of witnesses, and the jury found these witnesses you don't like. The jury found them incredible. Your Honor, in the context of the Griffin error, they found him guilty beyond a reasonable doubt. Now, what we're asking – what I'm asking the Court to say is, if the Griffin error were removed and the jury had been given – had not had a – and the prosecutor had not had a thumb in the scale of their deliberations, would they have found reasonable doubt here? Now, on habeas, I think the Court looks – if the evidence is an equipoise as to how the case might have come out, i.e., whether there would have been reasonable doubt or not, the Court has to grant habeas corpus relief. And the fact that the jury found sufficient evidence to convict in the face of the – doesn't answer the prejudice question, because their deliberations were flawed by the interjection of this constitutional violation, by the prosecutors urging them to make an unconstitutional improper inference of guilt. What weight do we give to the challenge when the first Griffin objection was made and the prosecutor backed off and said, I'm not suggesting that the defendant needs to be the one who testifies? What weight do we give that? Your Honor, I recall the passage very well. And I think that the weight – I'm not suggesting that any defendant has to testify that it's not the law. You will get instructions. I'll go over them. And neither side has to produce all the evidence in this case. Certainly, a defendant does not have to even produce any evidence. He's entitled to rely on the state of the evidence, but a defendant may also certainly put on evidence. That's what I'm talking about. And the insidious part of this is the prosecution said, all that's well and good, at page RT-1448. All that's well and good. He says, no one has to put on any evidence if they feel my case is so weak. But if the only witness you put on is somebody who wasn't even there, that is a – now I'm paraphrasing the argument. That's a damning thing to do, because that's – what that shows is there's no witness. No one can contradict Sandoval was not there. And so all of the lip service, I'm using that not in a pejorative tone, but in a – characterizing it from an appellant's point of view, paid to that instruction was undone, undermined by the direct argument that it doesn't make a difference if the defense only presents character evidence but chickens out from backing it up with alibi evidence. Well, you said you certainly haven't heard any evidence as to an alibi for Mr. Duong. No friends or family who were with him. Nothing to excuse him, put him somewhere else other than the scene. Do you think the jury is necessarily going to infer that, as you graphically demonstrated, they will understand they're also understanding the prosecutor to refer to the defendant himself should have taken the stand and offer an alibi? If they didn't infer it from the passage that Your Honor just quoted, they certainly would have inferred it from the follow-up in the prosecutor's closing argument when there was no reference to friend or family. It was a categorical thing. There is no witness. No one can contradict Sin Duong was not there. And that's just – I'm guessing, Your Honor. I'm speculating here that if we took this passage and circulated it to the audience here and we asked the collective audience to make a check, does this call to your mind that the defendant didn't testify or is this neutral as to whether the defendant didn't testify? I think I could rest my argument right here, but instead I'm going to save the remainder of my time for about a minute. Thank you, counsel. Good morning, Your Honor. It's Morris Bates from the California Attorney General's Office on behalf of the appellee. The case in question had a lot of witnesses and took a long time and very complicated. There was extensive testimony over a two-week period by witnesses produced by the prosecution. These witnesses were participants and related individuals, co-defendants, well, related individuals related to the murder of three unarmed young men playing at a video machine. Some of the witnesses had gotten grants of immunity. Others were associated with the culture in which this occurred. And there was also considerable impeachment from police officers with respect to what the witnesses had previously told them. This is what the prosecution had presented over this period of time. And there was testimony that someone saw Sen with a .22 caliber gun. Sen was seen in the parking lot of the cafe where the murders occurred in which the group that committed these murders were gathered and appeared to be checking out the cafe before going in and killing the three victims. There was testimony that Sen admitted to being at the cafe, but that he merely shot or fired his gun up in the air. He admitted being at the cafe. He admitted using a gun, but just shooting it up in the air. He was identified on the tape taken inside of the cafe during the shooting of these three victims. This was presented as evidence by the prosecution. The defense presented no evidence rebutting the testimony about Sen's presence at the gathering in preparation for these killings. His presence at the cafe where the killings took place and of actual participation in the shootings of the three individuals. No witnesses were called, no defense of any kind other than an individual with respect to the defendant's personality and character. Under Griffin, as explained by this court many times, a prosecutor may properly comment upon a defendant's failure to present witnesses so long as it is not phrased to call attention to the defendant's own failure to testify. A comment on the failure of the defense as opposed to the defendant to counter or explain the testimony presented or evidence introduced is not an infringement of the defendant's Fifth Amendment right. In this case, the prosecutor had a situation in which there was a substantial number of witnesses and testimony establishing that Sen Dong went to the cafe with others armed with that .22 caliber gun with the intent to take revenge for the shooting of a friend named Do. The defense offered nothing to rebut the finding that he was at the cafe or participated in the killing or why the victims were killed. The prosecutor, during closing argument, argued that the defense, not the defendant, the defense called as a witness only a person to testify about his character and there were no friends or family members called to provide an alibi. All the inferences from the evidence show that his guilt, and this is what the prosecutor argued, all the inferences from the evidence showed his guilt and all the defense consisted of was a witness who could not contradict the prosecution showing that Sen was at the crime scene and participated in the murders. The prosecutor, upon objection, also clearly and expressly told the juror that the defendant, Sen, had the right of silence. He did not have to say anything. He did not have to testify. Didn't that make it worse, really, though? Pardon? Didn't that make it worse? To say what? To say, no, you shouldn't possibly hold it against him that he didn't testify. That would be wrong. I hate to be cynical, but you've seen that kind of argument where somebody plays off an objection and then completely poisons the atmosphere by explaining exactly to the jury what the significance was. That would be wrong to do that. And as I read this, there is a – of course, I wasn't there. I don't know inflection. I have no idea. But there is a suggestion that when you say he's intended to rely on the state of the evidence, he may certainly put on evidence. I'm not suggesting that the defendant has to testify. Didn't that complicate the griffon error rather than reduce it or potential griffon error? Judge, how does it differ from the limiting instruction that the – Because it came from the prosecutor as opposed to the judge. Again, we have the prosecutor explaining what kind of a case he presented and what kind of a case the defense presented. They object on griffon grounds, and he tells the jury, look, the defendant doesn't have to testify. Just look at what is presented by way of evidence. How is he going to avoid that objection, and what effect does the court's instruction telling the jury not to consider the fact that the defendant didn't testify help in the situation? The jury was told by the prosecution, by the defense attorney, and by the court not to take into account any failure by the defendant to testify that he had a right to be silent. Every participant in the trial told that to the jury, clearly, unequivocally. At some point, what you say has to count, has to matter, and I think that matters here. Moreover, the question is, ultimately, before this court, was the state court objectively unreasonable in concluding that there was no griffon error in light of this record? Perhaps this court or some of the judges on this court might shrug his shoulder and say, I think I would have found there to be error. Would any, every reasonable judge have done so, have believed so, have found so? If there is any reasonable judge that would not have concluded that there was error, we win. That's the standard of the AEDPA. That's why it was enacted, to give deference to the state court's findings of law, to protect state court rulings unless there was a clear, a clear violation of constitutional law. And then we go to prejudice. What was the prejudice here? All the evidence showed that he was, that the sin was there. There was a video that showed that he was there. He was with a group that went to the cafe to commit these murders. He was with the group, as observed on this video. He said he had a gun. He said he fired a gun. And that he participated in shooting three helpless people. What kind of prejudice would that statement, that alleged violation of Griffin have had in this case? I say none. Unless the court has any questions, I'll sit down. Any questions? No. Thank you. On the subject of prejudice, I'd like to point out the fundamental principles of Federal and State law that character evidence by itself can raise a reasonable doubt. That's an unobjectionable principle which the defendant attempted to invoke and avail himself of in this case. The prosecutor's Griffin argument not only violated the Fifth Amendment privilege, but it was used to undermine the character evidence. And so when the court's doing a harmless error analysis, I think it's important to show that the defendant got a double whammy here. Not only was his, was he faulted for not testifying, but the prosecutor, the thrust of the argument was that the character evidence was window dressing, unless it's backed up with an alibi. That's the thrust of the argument. When there's no, when nobody contradicts that Sen Guang was there, the inference you make is that he was there and that he did it. And the final argument regarding prejudice is the trial court in the jury's presence overruled the defense objections twice, thus giving the jury, conveying to the jury that what the prosecutor was doing was acceptable. And that compounded the prejudice from the prosecutor's text itself. I'd like the court, I'd like to refer the court to Rt. 1458, where after the second Griffin error, 1258, I'm sorry, Your Honor, 1258, where after the second Griffin error, out of the presence of the jury, defense counsel goes to the trial court and implores the trial court to admonish the district attorney for the Griffin error, instruct the jury that you can't make an adverse inference against the defendant from not testifying, to provide some remedy. And the trial court reiterated that when I ruled in front of the jury, I ruled it was not Griffin error as far as the court saw, so your objections now are overruled. It's clear from this that this did have a substantial and injurious effect on the jury's weighing of the two sides of the evidence. Thank you, Your Honor. Thank you, counsel. The case just heard will be submitted.
judges: Noonan, Thomas, Fisher